I want to welcome all of you to the Fourth Circuit today. We have two interesting cases to discuss, the first being Sons of Confederate Veterans v. City of Lexington. Mr. Strelka, did I pronounce that correctly? We're pleased to hear from you, sir. Good morning. May it please the Court, my name is Thomas Strelka. I'm here representing the Sons of Confederate Veterans of the Virginia Division against the City of Lexington and others. Your Honor, this case comes to you after being dismissed on a 12b6 motion for failing to state of claim. Three issues before the Court as the appellant will underscore today are whether the enacting of Section 120-205 by the City of Lexington equated to the closing of a forum, the second being whether this act by the City equated to government speech, and third, whether the 1993 Consent Decree was violated by the ordinance and thus rendering the appellee in contempt of court. The briefest recitation of facts at hand, in November 2010, the Sons of Confederate Flag Standards. These are poles that are glorified flagpole holders that are attached to lights in the City of Lexington. Flagpole holder? Flagpole holder. How tall are those things? Like six inches or something? The holders themselves? Your Honor, factually I'm unsure. I would imagine... I couldn't find that in this record. What, you put the flagpole down in it? Yes, Your Honor. Is there a height for the flagpole or anything? Your Honor, I'm unsure about the height of the flags utilized. But the flagpoles aren't out there on the street all the time. When they get ready for a parade, they go out and put them in the flagpole holder. Only the holders which are called standards are on the street. Is that your understanding or not? You don't know. My understanding, Your Honor, is that there are standards which are glorified flagpole holders affixed to light poles within the City of Lexington. Okay. That no flags typically fly from these unless sought... unless asked for permission to fly flags through the City. They had a... it was through the permission of the City. But they passed an ordinance that said the only flags that they're going to allow on the flagpole holders are the flag of the United States or the flag of the Commonwealth of Virginia or the flag of the City of Lexington, Virginia. That's correct. Correct? Yes. And you're saying they ought to allow the flag of the Confederacy? Your Honor, the flag... Is that what you say? The flag that was requested of the Sons of Confederate Veterans to fly was a Confederate flag. It was not the stars and bars that we all come... we've all associated. There are all kinds of Confederate flags from my understanding of history. People... isn't that right? I'm sorry, Your Honor. There are lots of different Confederate... so-called Confederate flags. This one was a battalion flag. It was white. And I believe you'd have to be kind of a Civil War buff to associate it with the Confederacy. But... So that's what you wanted to fly? That's what the Sons of Confederate Veterans want, wish to fly. That's you? Yes. That's you. You wanted to fly, not the stars and bars. Not the stars and bars. But a white flag that what? It had an emblem in the corner of the flag, Your Honor. What did the emblem look like? I can't recall, Your Honor. Again, the point... the ordinance that was issued... Right. They adopted this ordinance, and the point was their ordinance didn't include your... whatever the flag looked like. Sure. It was not the United States. You say that violates the First Amendment rights? Yes, Your Honor. Of the Sons of Confederate Veterans? Absolutely. Of Virginia? Yes, Your Honor. Okay. Did Judge Wilson say no, that threw you out on 1286? He did. Did he find it was frivolous? He did not say it was frivolous. He said we failed to state a claim, Your Honor. We concede, the appellants concede that the ordinance on its face is neutral. The ordinance on its face is neutral. You concede that? Yes. Yes, we do. Well, it doesn't... I mean, that's it, isn't it? No, it's not, Your Honor. No, it's not. Thankfully, it's not. Your Honor, this court has held that the closing of a forum, and the mechanism of the closing of this forum, in this case, is that of the ordinance. There's another part of that. I'm very interrupted, because we do that a lot. You saw what went on here in this earlier case. If they have a parade over there, you all can get in the parade, right? Yes. You can get in the parade, and you can march down Main Street, or whatever street they call it in Lexington, and you can carry your flag. Yes, in fact, there's a parade. You can march right down the street in the parade, and carry your flag, or flags, or whatever you want to. Yes, but that's not the forum we're talking about. I know, but you still can do that. They didn't do anything. This ordinance doesn't affect that. You're right. Okay, but you want to have a... When they have a parade, you want to put them in the city standards. Yes, the forum... And the city owns those things. Yes, Your Honor. And you admit that. Oh, yes. And they say, we're going to have them for three flags. Yes, Your Honor. The national flag, the state flag, and the city flag. You don't have any objection to any of those flags. No, Your Honor. But the ordinance itself, though neutral, it was held in Crawford versus... And those are all entities that exist right now, right? I mean, these three flags... I don't... I mean, the Confederate States of America didn't survive 148 years ago. No, it did not. But the Sons of Confederacy is alive today as an organization, and has regular meetings in Lexington, has used the standards before, Your Honor... Before the ordinance was passed. Before the ordinance was passed. Your Honor, going through the facts of the case... They also had fraternities over... Yes, and that is incredibly important. Things like that, and right. I mean, that's the history of it. That is how we get... I'm saying that the enacting of this ordinance, though neutral on its face, closed a public forum impermissibly, and that it showed viewpoint animus against... Well, it closed it not just to your clients, but to everyone, except those three different flags that are allowed to fly. Why isn't that contract neutral and reasonable? And isn't that the end of the inquiry? No. No, Your Honor. First off, this court has held that a neutral ordinance, or law, does not mean it can't be unconstitutional. Further, inquiry into the legislative intent is not out of bounds. The Sons of Confederate Veterans were denied this opportunity... Well, how do you distinguish O'Brien? That suggests that that really is a shaky terrain on which to try to gauge the legitimacy of an ordinance, looking behind a legislator's motives. There are all kinds of reasons why legislators do the things that they do. Sure. Sure. Well, Your Honor, at this point in the case on this 12b6 motion, we contend that there are factual analyses that are necessary to determine the issues that the court ultimately determined, and that these factual analyses were not... The court never got to that point. The litigation never proceeded to that point. You didn't get discovery? No, Your Honor. We never got discovery. Okay. So that's the only relief you're seeking, is a right to discovery? No, Your Honor. We're here today to say that the district court erred in dismissing this case on a 12b6, for lack of... We are saying today that we have stated a claim for relief. Right, which will get you discovery. Which will get us to the discovery position of the case, Your Honor. Okay. I'm taking one step back. So you don't say we ought to rule in your favor on the merits today? Your Honor, I don't think that that is before the court. The only thing that's before the court is a pro-vote review of a 12b6 motion. That is before the court. Whether or not the complaint as filed has stated a claim, that's the case before this court right now. How do you get around Kensington and our holding there that basically said we don't look behind legislative motive on a facially neutral... Behind a facially neutral budget ordinance in that case? And that was a free speech. That was a first amendment. Yes, Your Honor. Well, I would have to highlight the case of Joyner v. Williams, that this court ruled that it was a forum... It was a college newspaper that was closed and it ruled that there was a viewpoint animus in determining... In examining the closure of that newspaper of why. Once the trial court was able to investigate as to what will underlie the basis of the closing of the newspaper, then it was discovered that there was a viewpoint animus in effect. So you're saying that Kensington was wrongly decided? I'm saying that in the current case under 12b6 motion, we are allowed to proceed under factual inquiry under the allegations as stated in our complaint. What kind of facts are you going to get besides trying to go at their motivation? Well, Your Honor, under the facts of the case as we know now, we know that the other private organizations had asked for the ability to use flag standards, to use their own flags, to broadcast their own message in a non-permanent way in this form of the flag standards. That the city had allowed up to five other entities that were not state or city related to use these standards. They don't do that since the passing of the ordinance. They don't do that since the passing of the ordinance, that's correct. But it was the Sons of Confederate Veterans who made the most recent inquiry into the uses of standards. It was Councilman Lira who was the sole voter against, in 2010, the Sons of Confederate Veterans to use their flags in the flag standards. And it was Councilman Lira who then indicated to council that he would request a new policy be drafted to govern flags and the use of flag standards. There is no evidence that the flag, as far as selectivity or permissive use of these standards, there's no evidence that the city ever really denied anyone up to the point of this ordinance, the use of those flags. It wasn't until the Sons of Confederate Veterans asked, then there was a hearing, a vote, they were allowed, then Councilman Lira stated that he wanted to have a policy drafted. Policy was drafted several months later and that was this ordinance. Thus closing off the flag standards to use to anyone who wanted to broadcast a message outside of the United States flag, whatever it would convey, the city or state flags, whatever they might convey. The Apo Lee has underscored an argument of government speech frequently throughout their brief and there's one case that they go back to is the Sunum case, if I'm pronouncing that correctly. But that case regarded a very traditional public forum and I concede that flag standards are not, at this point, a traditional public forum. But in the Sunum case, you have a traditional public forum and the city in that case decided not to have a monument placed in the park. The decision for a monument, the monument to be placed in the park was a request of a citizen or an organization not affiliated with the city. But the monument to be placed in the park, there was a decision by the city not to have that monument, we're not having it in the park. That court, this court, the Sunum court, held that the, that decision by the city was government speech and thus we can't scrutinize government speech and so First Amendment hands off. However, it's exceptionally important to note that in that case, the court highlighted consistently the permanency of the alteration of the public forum by having this statue that's going to be there, this monument, for as long as stone can weather the elements. There's no permanency in the instant matter, the flags were merely to be flown for a day or that's about it for the sons of confederacy, they wanted to fly them during their parade on Lee Jackson Day. Furthermore, there is a, there's a very important case that has not been cited in the Applebee's brief and I highlight that there's a good reason for that. This court has adapted a four-factor test, it's very fact sensitive inquiry as to whether or not there is government speech and that was in the case of was the Fourth Circuit case in 2008. It has a four-prong test to determine whether or not this, the enactment of the ordinance was government speech. The first prong is to analyze the central purpose of the program in which the speech in question occurs. The second is the degree of editorial control that the city might have over the message. The third is who's the literal speaker and the fourth being whether the government or the private entity bears the all of those prongs. The, on the first, the central purpose of the policy, the displays of the flag were pursuant to requests of private organizations and the organization sought access to the flag standards in order to honor or commemorate their specific events. These displays were not initiated by the city in any way and the city was not seeking to promote those messages. The second prong, editorial control, well they didn't exercise any editorial control, there was a kind of a binary system. Yes you can fly your flags, no you can't. Now they never exercised the no you can't up until the ordinance but as far as editing the message or having any control of what's in the message, they never exercised that before. Number three, the literal speaker. The complaint alleges that the flags flown were those of the organization, the Suns crafted by that organization, but that the organization itself owned the flag. Now in another case that's significant from this court in 2002 in which we were the appellant in that case and there were Sons of Confederate Veterans, XRL Griffin versus Department of Motor Vehicles, that was the case that got a confederate flag on a license plate. It was found that the owner of the item displaying the message is often considered to be the literal speaker. The owner of the items displaying the message here were the Sons of Confederate Veterans. The flag standards were owned by the city but not the flags. And finally as the ultimate responsibility for the content of the speech there is no indication in the complaint that the city exercises or even requested any control over the content of the flags. In some there is no basis for ruling that the complaint shows as a matter of law that the display of a private organizational flag from the standards constitutes government speech. That argument simply doesn't hold water. This case involves factual analyses, factual analyses that cannot be eliminated on a 12b6. Let me ask you a question about the consent decree and your contention that the city is in contempt. I mean read literally the consent decree essentially requires as a precondition that there be some place or event that's given over to private expressive activity. Once the activity is shut down in that manner to with respect to everybody not just your client isn't that the end of the consent decree and there's no basis for finding anyone in contempt of court for that? Well surely the forum was open to private expressive activity. Well it may have been but I don't know that it intended to be open in perpetuity. Well your honor if the city has closed that forum then it is certainly possible in the light most favorable to the appellant in this case that there was a discriminatory animus behind the enactment of that ordinance. We're entitled to all those factual inferences in our favor at this point. There are more facts left to be uncovered such as the any intent that we can surmise from the council council members once we get through litigation. But as it relates to the consent decree the consent decree can be active or cannot be active depending upon as you write your honor whether or not the forum was open to private expression. Our argument is that it was and it was impermissibly impermissibly snuffed out by a point animus possessed by the city. Now the judge who entered the consent decree was judge Wilson. Yes your honor. And we've got some authority that says judges understand their own orders better than well than about anybody. One thing that and he's the same fellow that ruled on your case that's on appeal here so he knows something about this consent decree. Matter of fact he'd know about more about it than any other judge. Judge Wilson is the one who entered. Your honor you're correct Judge Wilson knows quite a bit. However it's important to know that in 1993 this consent decree was crafted from not it was it was signed by the court but it this was a negotiated black space and called a dissent decree. Yes. But it was approved by the sitting district judge. Of course. It had to be. It is his decree. Yes your honor. Right it is that's judge Wilson. And as you know. Say some time uh you got you got some time reserved. Thank you. Let's see what Mr. Carroll thinks. Okay. Good morning your honors. Jeremy Carroll on behalf of the city of Lexington. May it please the court. The questions the court has already asked of Mr. Strelka I believe addressed the the main point here in this issue your honor your honors and that is the nature of the closure of this alleged forum. We obviously dispute that there was a forum to begin with but even if there were a forum it has been closed by operation of the ordinance. Mr. Strelka concedes on behalf of sons of confederate veterans that the ordinance was facially neutral. And as Judge Diaz pointed out that that ends the inquiry under Kensington volunteer fire department which is a free speech case as Judge Diaz pointed out. You do not explore the motivations of legislators when they enact a facially valid ordinance or in that case a budget of budget amendment of budget law budget amendment I believe it was. Kensington relied on O'Brien. O'Brien is the supreme court case in which the supreme court held that whatever the motivation congress had in illegal to burn draft cards be it the alleged motivation that they had opposition to draft protesters was irrelevant if the the statute in that case was facially valid was facially constitutional and the court concluded that that indeed it was. Similarly in Hill versus Colorado the court reached the same decision this time it was based on abortion protesters as opposed to draft protesters but the court reached the same conclusion that you don't explore the viewpoint you look to see if it's a facially neutral facially neutral ordinance and indeed in those cases they found that it was and they did not explore motivation and in fact they have some strong language about the risks and hazards of exploring motivation. Well what's different about the cases that you're opposing counsel cites suggesting that in some instances the courts can look at motivation what's the difference? Well most of the cases that he cites are either equal clause cases and those have a different body of law and there is some need to explore motive the supreme court has held in those cases but by the same token the the supreme court has been adamant that in in speech related cases you do not need to explore motivation and indeed this court has held held the same with regard to the Kensington opinion. The Joyner versus Williams case which Mr. Shrelka mentions it was out of North Carolina Central University and the president of the newspaper college newspaper because of some articles I suppose that had been published in the in the newspaper the court there focused on the executive action of the president of the university. In Kensington the court focused on the legislative action noted specifically that it was legislative action in Kensington and used that legislative action to distinguish from other what you look to see is if it has an effect on anyone other than the plaintiffs or if the plaintiffs are treated differently and obviously with the neutral content of this ordinance facially it treats everybody the same nobody has been allowed to fly flags on the Lexington flag poles ever since since the passage of the ordinance so it is facially neutral it's legislative action under Kensington it applies equally to all private parties under Kensington and we cited Kensington on the brief because we respectfully believe it controls with regard to the mode of analysis the court there are and we cite in in our brief some actual not just free speech cases but specific forum closure cases which refuse to explore motivation gross bomb a seventh circuit case where a excuse me where the lobby of a city or county administrative administration building was was closed there the court held a facade for viewpoint discrimination in short requires discrimination behind the facade some viewpoint must be disadvantaged relative to other viewpoints and that's simply not the case here Middletown another case we cited however it is the rules themselves which must be viewpoint neutral the motivation for adopting a rule is irrelevant uh according to Georgia the gay versus Ohope similar language and indeed uh one of the Occupy Wall Street cases in this circuit it was a district court case down in South Carolina held similarly we don't explore the motivations of legislators when it comes to closing a forum in that in that case it was the South Carolina uh uh skate house grounds two other cases that I would sign ordinance cases but they deal with the concept of content uh Wagmore Dogs and Town of Cary and in those cases the only time the court deigned to look beyond the nature or the or the the language of the ordinance was when there was a content distinction in those cases even though there was a content distinction or differentiation in the face of the ordinance the court still looked at whether the nature of the distinction was because of content and determined that they were content neutral here we don't even have that inquiry because facially they're content neutral and conceitedly they're content neutral the Supreme Court and circuit courts have encouraged closure in the capital square case which I did not cite in the brief and I regret having not done that um the Supreme Court is 1995 Justice Souter in a concurring opinion stated I also want to note specifically my agreement with the court's suggestion that the state of Ohio could ban all unattended displays in capital square if it's so desired the Supreme Court that's a that was a traditional forum case and the Supreme Court said private unattended displays in a traditional forum could even be banned if it is a facially neutral now that was dicta can see I can see the point that was dicta but certainly the the indication is there that the ability to close a forum is absolute as long as it is content neutral and reasonable and for the reasons stated by Judge Wilson and and discussed here today we we respectfully submit that that this passes muster under that analysis what what O'Brien says is that part of the reason why we don't want to look behind legislative motive is that it is at best a hazardous endeavor but what if it was very clear in this case that the principal reason why this uh why these flag standards were being shut down was precisely because of the the the speech of the of the confederate sons is does that make it a different case it does not your honor uh respectfully the uh and I would refer to the language and Judge Wilson cited it in one of his footnotes from Justice Scalia and his concurring opinion in Conroy we are governed by laws by not by the intentions of legislators if the law is facially neutral it passes muster under this type of free speech analysis and certainly under the forum closure analysis given the cases that we've cited the the closure of the forum is not the only reason to affirm the decision of Judge Wilson this would also constitute government speech your honor government speech be at the summum case referenced by Mr. Strelka or the page case page versus Lexington County School District which is the case from the fourth circuit which was the leading case in having to do with government speech those cases your honor stand for the the proposition that where a government governmental entity owns and controls the forum and limits access to the forum it can then engage in speech I don't mean all forum across the board but if in a traditional forum such as a park the city has the authority because it is the speaker and through its selection of monuments it is speaking it then has the authority to exclude other monuments then respectfully here we submit that the the city as the speaker these are its flagpoles Mr. Strelka said there was no he alleges that Washington and Lee and VMI asked for access to those polls five or six times a year and were granted granted access three times a year so there is some indication of selectivity on the face of the complaint but but more importantly what he alleges is that when W&L and VMI and the Sons of Confederate Veterans and the fraternities obtained access to those polls they had to get the approval of the city city council passed a resolution or city council passed a motion city council controlled those flag standards at all times did they ever deny a request there was the uh the as I referenced from paragraph 21 W&L and VMI requested more than they were ultimately granted and I believe um the January 2011 uh request by Sons of Confederate Veterans it overlapped with Martin Luther King Day and the city had already intended to fly the American flag on Martin Luther King Day so their request was denied as those two days what do these standards look like uh to answer your question I meant to go back to that I apologize Judge King yeah your light poles are 10 12 feet tall or so and the standards are eight eight or so feet above head level so they're they're up in the air yes on the light pole yes sir okay and the flags go off and the flags go out at an angle these are small flags yes sir yeah I'd say they're six foot flag poles that come off the uh come off of the standards so the flags are what 10 or 12 feet in the air probably higher than that probably the bottom of them might be 10 feet but the top of them probably 14 feet or so okay um and and there are they lie in Main Street and there's some on Jefferson and Washington Street as well you know in in Lexington but the Summum case and the Page case you focus on the identity of the speaker who does that speaker establish the message and does that speaker control the message and clearly the city through that process even before the ordinance of legislatively approving certain people to to fly their flags on the polls was engaging in government speech and then I don't think it's really contested that after the enactment of this ordinance which is being challenged that clearly the government is speaking at all times from those from those standards at this point you would ask a question about whether the the sons of Confederate veterans could indeed march up and down with their flags that they can they do they have the right to nobody takes the ordinance is expressed that it preserves those those private individual rights nothing to prohibit individuals or curtail individuals from carrying flags in public and or displaying them on private property in the 1983 um 1993 consent decree came out of that type of situation where there were some people who wanted to carry flags for 100 150th anniversary of Stonewall Jackson's death perhaps or forgive me 100 100 it was 100 wasn't that it was see it wasn't that it was something I apologize uh some kind of maybe it was his birth maybe it was his birth and um in any event there was some discussion about carrying the flags in the cemetery and that's it was that public display on public property by individuals it was 100 years after Stonewall Jackson died yes is that right uh maybe your honor I will say that is not a that's not a crucial fact that's not it was 100 years old I believe from the facts of course it's just 150 years now correct correct your honor because West Virginia became a state in June of 1863 this would have been 1863 150 and and so the consent decree dealt with private speech private speech on the streets private speech uh on private property private speech on public property but marching with flags it didn't deal with flag standards in fact as alleged in the complaint no no private entity was ever allowed to access those flag standards until 1994 so it couldn't have been a subject of the of the consent decree but Judge Wilson pretty much summarily denied their claim on the consent decree well I think I think the important point there is he he made it clear that the consent decree was not intended to grant any judicially enhanced rights the sons of confederate veterans and their members have the first amendment rights of everybody else and this case does not present a situation where the city has violated those rights and therefore not only is there not a first amendment violation there's not a violation of the consent decree either if the court does not have any further questions we respectfully request that the court affirm the decision of Judge Wilson because this was a facially content neutral reasonable closure of a forum if one existed and because at all times the city was engaged in government speech when it when it spoke and delivered messages from its flag standards and we respectfully request that it also deny the request to to overturn the decision as to the consent decree thank you thank you very much Mr. Diaz your comments regarding O'Brien and Kensington a little further in O'Brien this established that laws regulating conduct that have an incidental effect on speech may not be challenged under the first amendment this court recognized that O'Brien dealt with a law that did facially abridge speech and found that also was the case with respect to in Kensington's budget ordinance the instant case does does involve a law that restricts expression and so the O'Brien analysis is inapplicable now there's a case I'd like to reference that's a Supreme Court case Holder versus Humanitarian Project that's 130 SCT 2705 in that case in quoting another U.S. Supreme Court case Texas versus Johnson states that if a government regulation is related to expression quote then we are outside of the O'Brien test and we must apply a more demanding standard a more demanding standard than O'Brien must be applied in this case this case is not one in which there was an incidental effect on speech there was a quite a monumental no in this instance there was a closing of the form that closing through an action of the ordinance did not amount to government speech if the court has any other questions I'd be happy to to discuss at this time appreciate very much thank you we'll come down and re-counsel and take up the next case
judges: Robert B. King, Albert Diaz, Henry F. Floyd